The next case on our docket is 21-1802 U.S. v. Joseph Miner. Good morning. Benjamin Silverman for Joseph Miner. This court should make clear that a young man cannot be sentenced for who he is and what he is or what he believes, however distasteful. Immediately before imposing Joseph Miner's sentence, the district judge told him that when someone shows you who they are, believe them the first time, and that he had revealed himself to be a full-blown Nazi. And when it listed colleagues who served in the Second World War and said that it would not see the second edition of Mein Kampf in the Eastern District, the district court made clear that it was my client's ideology and views that upset him and motivated the sentence and punishment. What happened? Please, you go. If the sentencing proceeding had gone exactly as it went other than that statement at the end, so if the court had taken into consideration your client's posts and the link between the ideology and sort of violent ideation, but hadn't given the little speech at the end, would you be here today? No, Your Honor. The district court had found unobject- I mean, I disagree with the district court's finding that my client poses a danger, as did the government psychiatrist. But it was not an abuse of discretion. I would not be standing here. But making proper 3553A considerations, however thorough, did not give the judge permission to then castigate my client for its views, and in a statement in the written opinion that's called conclusion, summarized by saying that he would be punished to discourage him from those views. Further, on pages A112 and A129, and those are respectively the oral sentence and the written opinion that came later, the district court stated that it was seeking to deter both what it saw as Mr. Minor's inclination to violence and- Is it inappropriate to look at a defendant's views when they are related to the crime in question? Two points, Your Honor. It's not inappropriate to look at the defendant's views for proper purposes. For example, the government cites Barclay v. Florida, a case that says that when there's a victim and it's a hate crime, it's permissible to look at the motivation. His postings included all these racist, anti-Semitic, misogynistic rants. And then he connected it to violence and threats of violence and mass shootings, and he was glorifying violence. Why was it inappropriate for the district court to then comment on this? It would not have been inappropriate, and we do not object to the part of the 3553A discussion that finds that the district court concluded my client was dangerous because of these things. I disagree with the finding, but we're not appealing that. But what happened at the end, the court said, the court has this to say to you, Mr. Minor, as it pronounces sentence. And it- But don't we have that- But still, you call this, in your brief, you call this, you describe the district court as having sentenced your client to jail based on his abstract politics. When the district court went through a careful recitation of the postings, it included things like in response to a bloody crime scene photograph from the December 2019 machete attack at a synagogue in Monsey. He commented, he's M.G., not going to lie. This is pretty effing exciting. I mean, that's not abstract politics, is it? Your Honor, that part of the opinion is not objectionable, and I note that there's no harmless error analysis in sentencing review. It doesn't really matter here whether we think that the court would have come to the same sentence. Doing that, a proper set of 3553A considerations, did not then give a free pass for saying to the defendant, right before imposing sentence, that you are a full-blown Nazi, essentially saying you are disgusting and I am going to stop you from spreading these views. That was about what Mr. Minor said. And when the district court said never again- Didn't that really reflect no more than an expectation that he had a deep commitment to this hostile and violent approach towards individuals of the Jewish faith and of other certain characteristics. And therefore, there was reason for deep concern about what he would do if he were not sentenced appropriately. When the district court says never again and provides initial caps, that's really a denunciation of the ideology, not of a particular individual's statements about violence. And when you refer to stopping you from bringing the second coming of, or the second edition of Mein Kampf- Couldn't it be referring to the violence, the fear, the danger of violence? Your Honor, I respectfully submit that when you say you have revealed yourself to be a full-blown Nazi, being a Nazi in and of itself is not a reference to violence. It's a reference to what he believed. It's not in the context of just that statement. It's in the context of the whole thing. The district court did a very careful job reviewing each of the factors, detailed the history and characteristics of the defendant, and I would think that these kinds of views are part of the history and characteristics of a defendant. Makes the statement at the end that is, I don't know how to describe it, but does that really undermine the careful analysis and thoughtfulness that preceded it? I don't know that it undermines it, but it's absolutely wrong and it's absolutely impermissible. Two points, Your Honor. First, when the district court talked about deterrence, and this is at A129, it said it wanted to deter both my client's inclination to violence and his racist and anti-Semitic behavior, and it set those apart as separate things. And the latter part of that is clearly impermissible. My client is absolutely permitted to engage in racist and anti-Semitic behaviors. He's not allowed to engage in- Not in conjunction with violence and threats of violence. Yes, Your Honor, but the district court was- But you're trying to pull it out when it's part of a context. Well, my client has never hurt anyone. He wrote things online that- He bought body armor. He bought weapons. I understand. Yeah. But considering all of that, and considering those things properly, does not green light the court to then castigate the person for their abstract beliefs. And that's why this case is within Delaware v. Dawson, because what was said at the end was an unnecessary- It was- Well, the district court described it as a concluding remark that was to tell Mr. Minor that I will not allow the second edition of Mein Kampf in my district. That's not about you being violent. That's about you bringing these ideas into my district. Don't you- I mean, you've conceded, not that you agree, but you're not trying to challenge and appeal the 3553A analysis. Once you acknowledge that the court was entitled to take into account the factors that it considered, don't we have to understand the conclusion in light of everything that's come before and view it as essentially a restatement of some of the high points, a summary, but not some, oh, by the way, here's a new set of considerations I'm adding? I don't think so, Your Honor. The district court was under no obligation to state a conclusion. It was under no obligation- The very final comments of the transcript, as I have it in front of me, is the court asks the defendant, Mr. Minor, if there's anything else he wants to say, and the defendant responds, God bless you, and the court responds, yes, God bless you. Yes, Your Honor. I mean, that is true. I don't think that that forgives what's said, and, in fact, the whole colloquy was the district court asked my client if he wanted to say anything. My client said not anything that I want to say. There was a back and forth, and eventually my client did say the right thing. He said, God bless you, to the court, and the court responded. It was quite a tense exchange, and management of that is one reason that I was not able to think to alloge an objection at the time. I also note that between when the district court made these remarks and when it imposed its sentence, there was no pause. I would have had to have interrupted the judge to enter an objection. The government correctly notes on page 45 of its brief that after the oral sentence is pronounced, anything else is ministerial, including the judgment in a criminal case, and that's one of the reasons that this court has taken a modified plain error view of sentencing proceedings, looking not just at the paramount importance of sentencing within criminal cases and within all federal proceedings, but also because even during a trial, a lot of preservation is accomplished during letter writing after court when the party. Yes, Your Honor. I see that. I know we're going to get to hear from you again, so my colleagues don't have other questions. Thank you. Thank you, Mr. Sullivan. Mr. Trout. Thank you, Your Honor. May it please the court, Assistant United States Attorney Kevin Trout for the United States. The district court did not sentence the defendant in un-cabin reliance on his nativist, racist, and anti-Semitic beliefs. It sentenced him for his crime of conviction and, consistent with the 3553A factors, his repeatedly expressed statements of violent adherence to those particular ideologies, the statements in service of those ideologies. His violent statements are plainly relevant both to the crime of conviction in this case, in which he purchased firearms, and to the 3553A factors. I'm sorry. What about the concluding statement? So I think Your Honor's questions got right to the heart of this, because that is what the defendant hangs his argument on. And I think the important point there, which Your Honor's questions also get to, is one of context. So first of all, just to correct the record, A129, which is the written opinion, does not say violence and racist, anti-Semitic behavior. It says violent, racist, and anti-Semitic behavior. The difference is substantial and I think goes to the heart of my adversary's argument. He's suggesting that these are different things, but in fact, the court's description throughout the sentencing hearing and then in its conclusion married these things together in a way that is appropriate under Dawson, Barclay, this court's precedent in Fell, and any number of other cases, including Schmidt from the Seventh Circuit, which we cite, and I think is quite close to the facts, and in fact, shows the outer limit, and we are well within that here. The last statements have to be taken in context with what the district judge said repeatedly throughout. So he cited a number of these messages, the defendant posing with a large knife and making comments about Jewish people, his desire to martyr himself, go out in a blaze of glory, form a hit squad, go out in a shooting spree. He said, I'm quoting from A109, this defendant attempted to acquire serious weaponry to further his white nationalist and white supremacist ambitions. He noted that the defendant sought weapons for, quote, boogaloo purposes. He wanted a racial holy war. He doesn't, Mr. Minor, through counsel, doesn't challenge any of those factual conclusions. And in that context, also I should point out, in the discussion with the psychologist, Mr. Minor called himself a Nazi kid. That's in the, I think that's in A103, but I can give you a citation for that. He refers to himself as a Nazi kid. With that context, at the end, the district judge is saying, you, a violent inherent to virulent ideology in which you are calling for the death of other people, and you are purchasing serious weaponry, helmet, flak jacket, all attempts to buy an AR-15 prior to the involvement of the undercover officer here. And then once the UC is involved, actually purchasing this serious weaponry, all of that together, the judge is saying, not on my watch. The judge used emotional language. Judges can be forgiven for doing that. It's an emotional case. And the question before the court here was, who is this person, Joseph Minor, that's before me? He's presenting a picture of a person who's not capable of violence, a person who has peaceful intentions. On the other hand, there is substantial evidence through his actions and his words that he believed something quite different and that he was, in fact, dissembling at sentencing. As one might, that is not the place to stand up generally and espouse the kind of things he had been saying on social media prior to his arrest. The judge credited his statements, public statements, as this court and the Supreme Court has said is permissible, and reached a conclusion about a within-guideline sentence. And just to make one last point, Dawson, which my adversary cited, I think supports us and not him because in Dawson, the court noted, the reason the court reversed or vacated in Dawson was because the stipulation was so bare. But the court said over and over again, if the government had put in the evidence it said it was going to put in about the violent nature of the Aryan Brotherhood, about their belief in committing murders and so on, we would have a much different case. The court said that on several different occasions throughout the opinion. And that's what happened really in Schmidt in the Seventh Circuit case where the defendant completely unrelated to the crime of conviction in that case. And that shows just how far away from the border we are here. In that case, he was arrested in the forest for chopping down a tree on federal property. He had a gun. He ended up espousing white supremacist views to pretrial. And the court found that that was appropriate there because of what those signified in terms of adherence to the law, future dangerousness, and deterrence. If there are no further questions, we'll rest on our papers. Thank you, Your Honors. Thank you. Mr. Silverman. Thank you. First, just to note, at page A129, it's a serial comma. Violent did not modify racist and anti-Semitic. They were in a list. The fact that my client referred to himself as a Nazi does not mean that it was a proper basis to put him in jail. And in terms of the government's argument that the district court was responding to my arguments that Mr. Minor, who had never been violent, was not violent, which was consistent with the government psychiatrist's conclusion that he's a low risk for terrorist violence. Looking at that conclusion, it doesn't talk about I think that I have to keep you in jail because you are a very dangerous person. It doesn't say, you know, I think I have a duty to the public. I can in good conscience let you out of jail, you know, with a below guideline sentence. It says you're a full blown Nazi. I have colleagues who fought Nazis. I will never again, never again, appraise about opposing the ideology, not in my district, not ever. And this- Can I ask a question about, Nazi is one of these terms that gets thrown around, right? Sup Nazi is not a particularly scary thing. We use the term sort of as a proxy for lots of things. But when we actually are talking about a Nazi ideology, is it your view that that's an ideology that is disentangled from advocacy of violence? That a Nazi ideology doesn't imply advocacy of use of violence? I think that's right, Your Honor. I mean, I'm not a political scientist, but it is not quite as close- I think that's right, Your Honor. My client has what he would describe, what he has described as far right wing, white nationalist views. They're certainly not my views. I don't think that they are inherently violent. And I also think it's important to consider that the district court's written opinion is on Westlaw. And if it is left there without a red flag, it will be cited around the country from years to come as saying, look at what the Second Circuit affirmed. The district judge said to the client who you are, what you are as a Nazi, and that's A-OK, that's fine. Complaints about sentencing for improper purposes are common. And around the country now, there are a lot of people who believe that certain defendants, January 6th defendants, are being sentenced for who and what they are. And when a district court says explicitly that it's doing just that, this court should correct the error. And the Robin, per curiam, and en banc decision sets forth why it should also be reassigned. It's not a criticism of the district judge. I know a lot of people who would be heartened by what the district judge said, but these were not appropriate sentencing considerations. And the district court, having made it as clear as he did about what his views are, Mr. Minor, his family, and the public would not reasonably believe that those views could be set aside. Thank you. Thank you both for your thoughtful arguments. We'll take it under advisement.